David S. Maurer v. Nicholas J. Muscarello Good morning, Your Honors. I'm Tom Hogan. I'm here on behalf of Mr. David Maurer. This case started out with multiple claims and multiple parties, but what we're here today about is the district court's decision to grant summary judgment in favor of the Tangemahoe Parish Rural Fire Protection District No. 1, its commissioner, Mr. Nicholas Muscarello, its other commissioner, Mr. Carlo Bruno, and its fire administrator, Mr. Dennis Crocker. The case was briefed essentially on whether there was a sufficiency of evidence in support of the defendant's motion for summary judgment, but the problem with the case is that the district court judge decided the case based on Rule 56, the Rule 56 motion for summary judgment rule, without taking into consideration the 2010 amendment to Rule 56. The district court was obviously unaware of the 2010 amendment because, in the district court's opinion, the district judge stated that the only evidence that would be considered would be admissible evidence. In fact, the district court judge made a specific ruling disallowing some of the evidence that Mr. Maurer submitted in support of his opposition. The district court raised the opposition on its own motion. The fire district defendants didn't make any objection on their own. The district court raised that objection on its own motion and also denied Mr. Maurer an opportunity to cure the objection. If you're right that more of this contract and some of this other evidence should have been considered at summary judgment, if we would agree to that, I have no idea if we would, would you tell us, would you recommend we remand and have the district court look at it, all the evidence in the first instance, or should we just look at it and resolve the motion here? I would suggest that the court remand it for consideration in light of Rule 56 in its present form. It was amended in 2010, and it really has not caught on at the district court level. In fact, this court, in a case that was decided on June 9, 2017, the panel was Judge Brevely, Judge Haines, and Judge Costa. Yourself, Your Honor. The Elwood Lee v. Offshore Logistical and Transport case, and that case is almost identical to our case here before us today. Obviously, if Mr. Maurer were afforded the opportunity to cure the objections that were made to his amendment, I mean, the step one would be he can verify his complaint. We have a 66-page complaint full of factual allegations that the court considered on numerous motions to dismiss. The court developed a factual narrative in the motions to dismiss that came before it on several occasions. So, in this case, you have the district court that has already prepared an extensive factual narrative based on the allegations that are in the complaint. But when it comes up to summary judgment, just between Mr. Maurer and the Fire Board defendants, then the court disregards its prior factual narratives and looks strictly at what was before it at the time. And I understand what has been said here this morning is that it's not the court's burden to go sifting through the record looking for evidence, but at the same time, the court cannot disregard factual conclusions that it's already made. Now, of course, I know it was on a motion to dismiss, but nobody in this case disagreed with any of those statements. And it's a well-pleaded complaint. I mean, in civil rights cases, the burden is on the plaintiff now to put in a well-pleaded complaint, and that's what we did. We plead facts, and we plead the facts that we believe we will be able to prove at trial. What did you allege was in the contract that would give him relief? Well, what's in the contract, Your Honor, is an extensive discussion of the rules that are imposed upon them about their equipment maintenance, about the maintenance of their facilities. There's an extensive employment policy in there. It provides for, like, for example, there's a drug policy, mandatory testing of an employee who's involved in an accident. There's a sexual harassment policy. There's a discipline policy. In fact, there's a policy in there for an investigation. If someone has a complaint against an employee of one of these fire companies that's contracting with the district, there's a procedure for the district to investigate that complaint. In fact, it's alleged in here, in this case, that an investigation was underway. Mr. Moore had been informed that there was going to be an investigation, but he was never afforded the opportunity to make a written response or to even be informed in writing of the charges that were against him. Did the contract give him that right to do that? Yes, sir. In the disciplinary, in the rules, in the part of that contract that provides for the investigation, it does provide that the employee is to be afforded written notice of the charges and an opportunity to respond to them. But that's the same contract that says that the firefighter is not an employee of the district or the parish. Doesn't it say that? Well, that is a requirement that the district imposes on its contracting companies. They make them sign a document that says that this does not constitute, you're not constituted as an employee of the fire district. But the whole point we're making is that... You're just saying that doesn't mean what it says. Is that what you're saying? I'm saying that it's a requirement that the fire board imposes on the fire companies. They make the fire companies employ... They make them say that, but does that mean they don't meet it? It doesn't mean that they, it doesn't, you know, saying that you're not my employee does not make you not my employee, okay? Because if our purpose at Tangipahoa Parish is to provide fire protection services throughout this parish, and this is the way we operate. We have the tax money that comes in, and then we contract with these various companies to provide the fire protection services in designated areas. Now, they have to have our approval to be hired. We pay 100% of their salary. So saying that you're not an employee doesn't make you not an employee. You've got to look to control, who exercises control over the employee. You look at the factors. So I guess two questions in that connection. The first is, then, why wouldn't the failure to consider the contract be subject to a harmless error analysis? Excuse me again, now? The failure to consider the contract by the district court. You're complaining now that the district court should have admitted that contract. Right. So, why wouldn't the district court's failure to admit it be subject to a harmless error analysis? Well, it could hardly be a harmless error, Your Honor, if it's been overlooked completely, because the whole basis of the... The whole basis... Do you want to get those? Not really. All right. The whole basis of the decision is that we were unable to prove that we had any standing to raise this argument, okay? The district court essentially bought the argument that the fire board put forward that Mr. Crocker was not Mr. Maurer's boss, okay? That they kept saying that Crocker was not his boss. They just kept saying that. Mr. Maurer kept saying Crocker. No, no, no. Well, but again, Your Honor, it's just like what you pointed out earlier. He didn't say Crocker wasn't his boss. He said that, Your Honor, but at the same time, if you look at the time frame, he became the... Not only did he say that, he never acted as if Crocker was his boss, did he? Well, of course he did. He's the fire administrator. If the fire administrator calls you on the phone, you're going to take his call. If he wants you to come up to the office, you're going to go up there. But there were things that Mr. Crocker wanted him to do that he just didn't do, isn't that right? Right, and also, Mr. Crocker tried to pin the Austin Davis $2,500 refund check on him. So, yeah, there were a lot of things that Mr. Crocker did. I hope you'll save some time on the civil service part of the argument, that he was a classified civil service employee. Well, in support of that idea, in support of that argument, Your Honor, we have a letter in the file. Again, it could be verified. I mean, we could verify Mr. Lawrence's letter, but basically the position of the state examiner of the civil service system of the state of Louisiana, the position of that officer is that when they hired Mr. Crocker, when they hired Mr. Crocker as the fire administrator, they created a classified system, okay? They created a classified system when they hired him. In fact, there's a letter that they sent to, there's a letter, in fact, there's an attorney general's opinion in the record. He was a full-time employee. He was a full-time, yes, Your Honor. He was a salaried employee. He was the fire chief of the Independence Voluntary Fire Department. So the other requirement is what, that he, that the district has a power to select, appoint, supervise, and discharge employees of the voluntary department? Right. And that's what we're saying is because they do, they do have control. In fact, Mr. Maurer's hire slip is in there. It shows that he, it shows the position he was applying for, and there are blanks on there for approval by the fire board. So everybody that gets hired by an individual agency like the Voluntary Fire Department, they have to be approved by the board, and the board sets their salary. And the board can remove them also. That's what was going on with this investigation. It was taking place in the July, that the board. What's the evidence on how your client's hiring? I mean, I know you referred to this hire slip, but what's the evidence on what actually happened when he got hired? Who selected him? Who approved it? The evidence is that Mr. Crocker, Mr. Crocker handpicked him, Mr. Crocker handpicked him to be the chief of the combined departments. Now, what happened when Independence, the town of Independence had its own fire department, there was also the Independence Volunteer Fire Department, all right? So the deal was Independence was going to close its fire department, and the Independence, the town of Independence firefighters, would become employed by the Volunteer Fire Department, and Mr. Moore would become the new fire chief. Mr. Crocker was being promoted. He was moving up to become the district administrator. And, did I answer your question? Whatever's in the record. Well, Crocker's the one who actually said, you'll be the chief of the volunteer unit. Right, he handpicked him, he handpicked him, he handpicked him, and Mr. Moore said, yes, yes. And I would just submit that, again, going back to the standard that the district court employed, the district judge cited to a case that's mentioned in the court's opinion, the Allwood case, the district court mentioned the Allwood case, and I just respectfully submit that you can't reconcile the Allwood case with the Lee v. Offshore logistical case. The rule on summary judgment has changed. It's a lot more lenient, and I think it indicates at least a willingness on the part of Congress to bring some more sense of justice into the summary judgment practice, because typically in an employment discrimination case, if you file a complaint alleging employment discrimination, you know that you're going to get it. And it's up to this court, I believe, to let the word go out that the court understands and appreciates the amendments to Rule 56 and instructs the district courts to abide by present form, and this case should be vacated and remanded. Thank you. You may proceed. May it please the Court. Rachel Gutman for Defendant's Appellees, Nicholas J. Muscarello, Carlo S. Bruno, Dennis Crocker, and Tangipahoa Parish Rural Fire Protection District No. 2. The record does not contain admissible, complete, executed evidence to create a factual dispute. Now, this Court, you know, has argued that the 2013 contract should be admitted for summary judgment purposes, but what wasn't put before this Court in argument was that the 2013 contract, as it is included in the record, is not a complete version of the agreement. Why didn't you object then? Your Honor, I was not counsel at the district court. Whoever it was, why didn't they object? I wish I knew, Your Honor. That's the process you use if something isn't admissible. I wish I knew, Your Honor. And your client could have put forth the other portions, the addendums that you're saying are missing, right? It's basically an additional document that you're saying is missing? Right. There's a Cooperative Endeavor Agreement between District 2 and the IVFD, and it's not in the record at all. There are other Cooperative Endeavor Agreements in the record between District 2 and other volunteer fire departments, but the terms and conditions of each of those Cooperative Endeavor Agreements are different. So there's no way to evaluate, based on the record, whether But you're not conceding that there's some other volunteer fire department with which you have an agreement that would indicate that those firemen are, in fact, employees of the parish. Absolutely not, Your Honor. So you're saying they're different, but the crux of the argument here is whether or not he's an employee of the parish. You're not saying there's any agreements that would evidence that. Right. Well, there's nothing to show that. But even so, the 2013 contract, if that's their argument, the 2013 contract apparently shows this employment relationship, then in that case, it's incomplete as to the IVFD because the Cooperative Endeavor Agreement isn't even in the record. But no, there is no employment relationship. The undisputed facts in the record show that District 2 was not Mr. Morrow's de facto employer. The hiring of Mr. Morrow, pursuant to his own deposition testimony, Mr. Morrow was hired by the IVFD board, the board of a nonprofit corporation. There is nothing in the record to dispute this fact. What about the hiring? But Crocker made the decision, didn't he? Your Honor, I do not believe so. It was the IVFD board pursuant to Mr. Morrow's own testimony. I mean, weren't there allegations that Crocker made the decision to hire him? If there are allegations in the complaint, Your Honor, those are not verified. The undisputed testimony in the record from David Morrow himself is that he was hired by the IVFD board. Okay. And Crocker was the administrator for the board. Crocker was the fire administrator for District 2, not for the IVFD board. Those are two separate and distinct entities. The IV is the volunteer unit? The IVFD, yes, sir. It's the volunteer unit for the Town of Independence. It is a private nonprofit corporation, and Mr. Morrow, multiple times in the record, actually, has alleged that Mr. Morrow was an at-will employee for this private nonprofit corporation. It has never been conceded, as alleged in the briefing, that Mr. Morrow was an employee of a public body. It has always been stated that he was an at-will employee. Did he need to get approval from the department board or from Crocker to hire somebody? He had to get approval, Your Honor, but as stated in the uncontested declaration of Dennis Crocker, the reason for that approval was for oddity. Now, what happened was District 2 funded the IVFD so that the IVFD could operate. Didn't they furnish him an approval-to-hire form that he had to get signed? An approval-to-hire form, yes, but the approval-to-hire was for auditing purposes. As stated in Dennis Crocker's declaration, that was attached to the motion for summary. And employees who are hired have to be ratified by the district? For auditing purposes, yes, Your Honor, because the district was paying their salaries. And this, by the way, is — But why does it matter the purpose? I mean, they had the authority — they had to approve any hire. They had the power, therefore, to reject a hire, correct? But they never did. Does that — but that doesn't go to who has the authority, right? Well, but the issue, though, Your Honor, is did they actually, in the hiring process, the IVFD or the fire chief, depending on who was being hired for the IVFD, that person was hired. And so the issue is that District 2 was just getting this approval so that they could, for auditing purposes, figure out that 7 percent of the budget that was allocated to the IVFD, whether that amount was being properly spent. You don't think the question is whether the parish district had the authority to decide whether someone should be hired? You think it's just whether they, in fact, exercised that? Your Honor, I don't think there's anything in the record to show that they had that authority necessarily. The hiring form was for auditing purposes. That's what's in the record. Who made — did Crocker have anything to do with the decision to fire the plaintiff? The plaintiff testified in his deposition that the IVFD board suspended him and the IVFD board terminated him. Is there any evidence that Crocker had anything to do with that? Nothing in the form of deposition testimony or verified allegations. Any other form? Not that I've seen, Your Honor. What I've seen is deposition testimony. I've seen declarations that have no relevance. For example, there's a declaration from Justin Morrill of the Loringer Volunteer Fire Department. Justin Morrill worked for Loringer, not for Independents. So we don't know whether the structure of Loringer was identical to that of Independents. We don't even know if Loringer had any sort of agreement with District 2. There's nothing in the record to that effect. So how do we know that Justin Morrill, you know, had the same terms and conditions to his employment or whether he was even under any sort of agreement with District 2? Further, Judge Graves, you made a note that I did want to bring up in this argument regarding paragraph 8 of the 2013 contract. To the extent that this Court may consider that contract, paragraph 8 states that all applicants shall sign a contract including a waiver acknowledging that they are cognizant that upon hiring they will be employees of the respective fire department, not an employee of the parish of Tangipahoa or the district. So the contract itself, the understanding from the terms of the contract itself, never mind the fact that it's incomplete, unauthenticated, unexecuted, we don't even know if this is the final contract that was entered into, it considers that those employees of the private nonprofit corporation are not employees of the district. And this distinction, notably, multiple Louisiana appellate courts have noted this distinction between municipally run fire departments and private nonprofit corporations that run fire departments. I refer this Court to the Louisiana Court of Appeals decision from the Fifth Circuit in Hines v. City of Gretna, a 1996 case. In that case, the issue was whether the City of Gretna operated a regularly paid fire department to allow the police department to be subject to a civil service system. So the issue was, did the city run a regularly paid fire department? The Court looked at the fact that the fire department for the City of Gretna was run by two private nonprofit corporations. And those two private nonprofit corporations received a fixed monthly fee from the City of Gretna. Now, all of the employees from those nonprofit corporations were paid directly by the corporations, not by the city. The Louisiana Fifth Circuit noted that even though the bulk of the budget for those nonprofit corporations came from the City of Gretna, that was not sufficient to find that the City of Gretna ran a regularly paid fire department. So essentially what Louisiana allows is they allow municipalities to contract with nonprofit corporations to run fire departments. Now, notably in Hines, the Louisiana Fifth Circuit also made note of the recognition by the delegates in the 1973 Constitutional Convention to the 1974 Amendment to the Louisiana Constitution. The delegates expressly recognized that volunteer fire departments, such as the IVFD, were distinct from municipally run departments. So these are two separate and distinct entities. So we don't need the contract between the department and the voluntary unit to see how much control the department retained? Well, Mr. Morrow's deposition testimony shows how much control District 2 had, and that would be none, Your Honor. But they had enough to fire him. Somebody fired him. The IVFD fired him, Your Honor. And wasn't that approved by the district? Your Honor, according to Mr. Morrow's undisputed deposition testimony, the IVFD suspended his employment and the IVFD fired Mr. Morrow. There is nothing in the form of admissible evidence in the record to show that Mr. Morrow was terminated by anyone else other than the IVFD. When you say admissible, do you agree that evidence at the Rule 56 stage has to be authenticated? Yes, Your Honor. What about the 2010 Amendment? Your Honor, in my experience, it is — I don't get experience. What about the rules? What in the rules after 2010 says something has to be authenticated at the summary judgment stage? At trial, of course, it does. Yes. Your Honor, to be quite honest, I did not particularly look at the 2010 Amendment and the change to the summary judgment rules between that time. I will tell Your Honor — Did you look at the case opposing counsel cited from June, the Maritime case, Lee? No, Your Honor. It was not cited in the briefs, and I did not know to take a look at it until it was mentioned this morning in argument. The only case that counsel cited in his briefing was the Fair Labor Standards case, Wilcox v. Terrytown Fifth District Volunteer Fire Department. I was not made aware of any argument regarding any 2010 Amendment to Rule 56 until just now. Well, he challenged the exclusion of the contract, but — Correct, Your Honor. And I do believe that the contract was properly excluded. I mean, it's not signed. There's no way to know whether these are the final terms of the contract or not. It has no signatures. It's not even a complete document. So I'm not really sure — You're saying there's an additional contract that wasn't included. Correct. There's an additional cooperative endeavor agreement referred to and — Which your side could have introduced. Anyone could have introduced. Correct, Your Honor. Anyone could have introduced that, but quite simply, it was not introduced, and therefore there was no factual dispute placed in the record. The only — the only documentation placed in the record was that 2013 contract in the unauthenticated, unsigned, incomplete form. And further, you know, to my knowledge, that — the 2013 contract in full could have been requested for production during discovery. I don't see it in the record. I'm not sure if it was requested in discovery, but I do wonder, Your Honor — I guess I'm confused. You're the one wanting to get this other agreement into the record. I don't understand why that's a problem for the other side. Well, I find it to be a problem, Your Honor, because there's no factual dispute here. Ultimately, the other agreement not being in the record just shows that there are no issues before this Court, that everything before this Court in terms of Maher's deposition testimony, in terms of — in terms of the declaration of Dennis Crocker, everything put forth before the Court shows that there's no factual dispute. And you keep — and the district court did focus on this issue of whether there's an employer-employee relationship. Correct, Your Honor. But under the statute for civil service, isn't the real question just whether this position, this one position of chief that the plaintiff had, whether the right of selecting, appointing, supervising, and discharging him was vested — In district. In the parish, right, district. Yes, Your Honor. That is — And that's really the narrow focus. It's — I'm not sure — why do we need to get into this bigger employee test that Louisiana generally provides in other contexts? I wondered that as well, Your Honor. My mindset would be that Louisiana revised statute 332541 applies. That controls. Correct, Your Honor. I do agree with that. Whether for this particular position, selection, supervision, et cetera, was based — there was authority in the parish district. Your Honor, correct. That would be the analysis. But all of the undisputed testimony, evidence, and the record shows that the selection, appointment, supervision, and discharge regarding Mr. Marr was all vested in the IVFD. There are no issues. And to the extent that — And explain to me again, how do you get around the fact that approval for hiring and significant purchases had to go through the parish district? It was for auditing purposes, Your Honor. It was not for any sort of control. The district — Dennis Crocker stated in his declaration he did not tell, you know, each individual volunteer fire department how to operate. He did not tell them who they could hire, when they should hire, when they should fire. You know, he made recommendations and suggestions. But as David Marr testified, he did not follow those recommendations and suggestions. He got fired, too. He did. By the IVFD board, Your Honor, not by District 2. And when you say for auditing purposes, there's no question tax dollars were going to the IVFD. That's correct, Your Honor. And so the auditors, are you saying, were interested in tracking how the tax dollars were being spent that were awarded to the IVFD? That's correct, Your Honor. It was just tracking how the money was spent, and that was because the IVFD was going broke. Then why wouldn't it just be a reporting requirement? I mean, why did they have to get approval? I mean, I understand you want to trace your money. So you could just say, give us your books, report things. But why do you have to say, I need approval to do this? That gives the parish control over whether to hire someone or to make a purchase. They could have said, you know what, it's going to bust our budget. Don't hire this firefighter. Right? Your Honor, that is, I understand where you're coming from, Your Honor, in terms of the budgeting purposes. But the actual facts show that the District 2 did not exercise any sort of control saying, yes, you need to hire this person, no, you don't need to hire this person. That was never said. All that happened is that the form was submitted. This approval-to-hire form was just submitted so that they could have proper records in order to show where the money was going from the taxpayers. Well, if they had any important question whether they had authority to approve, not what they actually, whether they exercised it or not, but if they, the important question is, isn't it, whether they had authority to approve hiring and firing. Your Honor, even to say that, the issue is that they did not exercise any sort of authority. So there's this. Why does that mean they don't have the power? Let me give you an example. So we hire law clerks every year, right? And there's all kinds of paperwork that has to get submitted up the chain of command. I think it ends up in D.C. somewhere. And they have to approve that we're filling these spots and hiring. I've never had them say, oh, you can't hire three people or four people for next year. But they could have. I could get a notice tomorrow that said, you know what, because of the budget, you're down to two law clerks for next year. I mean, doesn't that mean they have that power even if they haven't exercised it over the last 20 years? I can understand your hypothetical, Your Honor. I think the issue is, though, is we simply do not have anything in the record to show whether or not, when it came down to it, whether or not District 2 could say that. There's nothing to show that. All there is in the record to show is that David Marr, you know, would say, oh, I'm going to hire someone. He'd send a form up to District 2, and District 2 wouldn't come back and say, you know, no, you can't do that. He never had any problems getting approval. That's all we have in the record. If Your Honor will note, though, this, you know, approval thing, I think the real issue here is that, you know, other decisions from Louisiana appellate courts have found that even when a municipality contracts with a nonprofit corporation, that is, that there is a contract in effect between the two, that does not make the nonprofit corporation running a, you know, or does not make the municipality running a regularly paid fire department. I will also refer you to the Louisiana Fifth Circuit decision of Marks v. Third District Volunteer Fire Department from 2013. The Louisiana Court of Appeals for the Fifth Circuit noted that the Volunteer Fire Department was operated by its members rather than the municipality. So even when there was a contract, it was run by the members. And that's what happened here. The IVFD was run by its members. The IVFD had control over its own funds through fundraisers and donations, and it chose to purchase equipment through a vote of its employees. The IVFD had the right, through its fire chief, to choose how it responded to calls. David Marr testified about this. In 2012, he changed the way that the IVFD responded to medical calls. Dennis Crocker did not agree, but Marr did not change his revision to the policies because Crocker was not his boss. And so ultimately what it comes down to, Your Honor, is that David Marr, as the fire chief, had control over the day-to-day operations of the IVFD, not District 2. David Marr did not testify that District 2 said to him, you have to do this or you have to do that. They were recommendations that he did not have to follow, and nothing bad happened to him when he did not follow those recommendations. Additionally, the rights of hiring and termination were fully vested in the IVFD board and in David Marr when he was the fire chief, not in District 2. District 2 did not terminate David Marr. They did not hire David Marr. While there are forms, those forms are not sufficient on their own to show that District 2 could say, you know, or did say, yes, this is what you're going to do, this is what you're not going to do. And so as a result, defendants' appellees respectfully request that this Court affirm the district court's grant of summary judgment and find that David Marr was not a de facto employee of District 2 and therefore not entitled to procedural due process through the civil service system. Thank you, Counsel. Thank you. Rebuttal. Briefly, Your Honor, I believe the Court has got the issue. It's the authority to approve, just like you said, Judge Costa. It's the authority to approve. The fire district has the authority to approve everyone who comes to work in a fire company in Tangipahoa Parish. And concerning Mr. Crocker's role in the selection of David Marr, it's in the complaint. It's in paragraph 16 of the complaint. In September of 2012, Crocker approached the plaintiff and told Mr. Marr that Crocker would be hired by the district as an administrator. Crocker offered Mr. Marr the position of fire chief of IVFD under the new regime, which would be implemented on or before January 1, 2013. It goes on to say that Mr. Marr accepted the position. Yes, it's true that Mr. Crocker's selection of Marr to be the chief of the Independence Volunteer Fire Department was later ratified by the Volunteer Fire Department Board of Directors. Yes, it was. And it's also true that his selection of Marr to be the chief of the Independence Volunteer Fire Department was approved by the fire board. And we make the statement in the brief that it goes beyond auditing purposes. They are controlling the payroll. They require these volunteer departments to provide payroll information. They want a list of everybody, their Social Security numbers and what they're being paid, and that has to be submitted periodically in order for the department to draw down the funds to pay its payroll. It has to show the district who's working for them and how much they're being paid. And the other thing. Is there any summary judgment evidence that shows that Crocker was involved in the decision to hire Marr? If it is, are you talking about summary judgment evidence under the new rule? Yes. Okay. Well, then it would be in the complaint because even though it's an unverified complaint, that's true, but Mr. Marr can verify his own complaint, and everything that he put in this complaint, every factual assertion that he made in this complaint can be verified because he's testifying. If he's stating in his complaint that Crocker offered him the job, he can certainly testify to that. He can certainly testify that Crocker did offer me the job. That's how I got it. Well, the approval to hire for him for your client is in the record too, right? It's in the record, yes, Your Honor. It is. The parish district had approved. That form shows it approved his hiring. Yes. And I'm apologizing to my co-counsel for springing the Lee case on him, but I'll tell you how that happened. I've read the text of the new Rule of 56, okay, Rule of 56, and the part that I was interested in particularly was about subsection Rule 56, subsection E. That's what I was, I typed in my search engine to come up with cases that had mentioned 56E, and I didn't get anything. So then I backed it out to 56, 2015 forward, and that's when the Lee case came up. And I don't know if this panel is aware. It issued after your briefing. Yes, sir, it did. But it's the current law of the circuit, and according to the current law of the circuit, the district court erred when it failed to allow Mr. Maurer the opportunity to correct what the district court found to be a deficiency concerning the admissibility of his evidence, and it was not a harmless error. It was a fatal mistake, and the case must be remanded to the district court for further proceedings. If there are no other questions, I'll sit down. All right. Thank you. Thank you. The court will take this matter under file.